**SO ORDERED.**

**SIGNED this 3 day of November, 2017.**

_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WILMINGTON DIVISION**

IN RE:                                              **CASE NO. 09-08106-8-DMW**

**CHARLES T. OHNMACHT, SR.**
**CAROLYN G. OHNMACHT**                  **CHAPTER 11**

     **DEBTORS**

_____

**CHARLES T. OHNMACHT, SR.**
**CAROLYN G. OHNMACHT,**

     **PLAINTIFFS**
                                            **ADVERSARY PROCEEDING NO.**
**vs.**                                        **14-00213-8-DMW**

**COMMERCIAL CREDIT GROUP INC.,**

     **DEFENDANT**

**MEMORANDUM ORDER DISMISSING CLAIMS FOR RELIEF**

This matter comes before the court upon the Motion for Dismissal of Plaintiffs' Seven

Claims for Relief for Lack of Subject Matter Jurisdiction (with Incorporated Memorandum of

Law) ("Motion to Dismiss") filed by Commercial Credit Group Inc. ("Defendant") on April 18,

2017 and the Response thereto filed by Charles T. Ohnmacht, Sr. and Carolyn G. Ohnmacht

("Plaintiffs") on May 17, 2017.  In the Motion to Dismiss, the Defendant requests dismissal of claims for relief presented within this adversary proceeding pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[1]

The court conducted a hearing on June 29, 2017 in Raleigh, North Carolina.  Douglas R. Ghidina, Esq. and Robert G. Qulia, Esq ("Qulia") appeared for the Defendant, and Matthew W. Buckmiller, Esq. appeared for the Plaintiffs.  Based upon the evidence presented and arguments of counsel, the court grants the Motion to Dismiss for the reasons set forth herein.

## I. BACKGROUND

### A. Plaintiffs' Chapter 11 Case

#### 1. *Plaintiffs' Debt to Defendants.*

The Plaintiffs filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on September 18, 2009 and scheduled the Defendant as a secured creditor in the case.   On October 20, 2009, the Defendant filed a proof of claim asserting that on the date of the Plaintiffs' petition, the Plaintiffs owed the Defendant the amount of $113,473.26.  The Defendant's claim arose from a judgment ("Judgment") entered against the Plaintiffs and in favor of the Defendant on July 23, 2009 by the Superior Court of Mecklenburg County, North Carolina for the amount of $110,368.28, plus attorneys' fees and interest.  On August 24, 2009, the Judgment was transcribed to New Hanover County, North Carolina, creating a lien ("Judgment Lien") upon real property owned by the Plaintiffs in New Hanover County.

#### 2. *Preference Adversary Proceeding*

On January 27, 2010, the Plaintiffs initiated an adversary proceeding ("Preference AP") against the Defendant, seeking to avoid the Judgment as a preferential transfer pursuant to 11

---

[1] Rule 12(b)(1) is incorporated and made applicable by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.  Unless otherwise noted, all further rule references will be to the Federal Rules of Civil Procedure.

U.S.C. § 547(b).   On August 18, 2010, the court entered summary judgment in favor of the Plaintiffs and avoided not the Judgment but the Judgment Lien.   In its decision (the court's written adjudication will be referred to collectively as the "Preference Judgment"), the court found that original entry of the Judgment in Mecklenburg County did not create a lien or transfer subject to avoidance under 11 U.S.C. § 547, because the Plaintiffs at that time owned no real property in Mecklenburg County.

3.   <em>Plan of Reorganization</em>.

On May 4, 2010, while the Preference AP was pending, the court entered an Order Confirming Plan ("Confirmation Order"), which confirmed the Plaintiffs' Plan of Reorganization ("Plan") filed on January 18, 2010.   The Plan named the Defendant as the sole Class 5 creditor and provided as follows:

> (1)   <u>Description of Debt</u>.   The [Plaintiffs are] indebted to this creditor pursuant to a judgment filed in New Hanover County, North Carolina.   This creditor filed Claim No. 12 in the amount of $113,473.26.

> (2)   <u>Impairment</u>.   This class will be impaired.

> (3)   <u>Treatment</u>.   The creditor's judgment was filed within ninety (90) days prior to the filing of the petition.   The [Plaintiffs have] filed an adversary proceeding that seeks to void this judgment as an avoidable preference.   This claim will be treated as an unsecured claim.

The Plan designated the Plaintiffs' unsecured creditors, including the Defendant pursuant to the Class 5 treatment, as Class 14 with the following treatment:

> The [Plaintiffs] shall pay allowed general unsecured claims a total of $10,000.00, in quarterly installments of $500.00, commencing the earlier of January 15, April 15, July 15, or October 15 following 60 days after the Effective Date and shall continue quarterly thereafter for five (5) years.   All payments to this class shall be distributed pro rata.

Article XIII of the Plan, titled "RETENTION OF JURISDICTION," includes the following provisions:

3

The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of Section 105(a) and 1127 of the Code and for, without limitation, the following purposes, inter alia:

. . .

to determine all controversies and disputes arising under or in connection with the Plan;

. . .

to effectuate payments under, and performance of, the provisions of the Plan

. . .

to determine such other matters and for such other purposes as may be provided for in the confirmation order . . . .

Article XV of the Plan, titled "DISCHARGE," provides as follows:

Upon completion of payments, the [Plaintiffs] and the Estate will be discharged from all Claims and Liens and Liens [sic] expressly provided for in the Plan.  The discharge will be fully effective against all Creditors regardless of whether they have voted to accept or reject the Plan and regardless of whether the Plan is confirmed by consent or by resort to the provisions of section 1129(b) of the Bankruptcy Code.  However, even though no discharge will be entered until all payments are completed, the [Plaintiffs] will seek to have the case closed upon substantial consummation under § 1101(2).  Further, the [Plaintiffs] will seek to have the cause automatically re-opened pursuant to § 350(b) without the payment of a fee, upon the filing and service on all creditors and the Bankruptcy Administrator, of a Notice of Completion of Plan Payments and Request for Entry of Discharge, allowing all parties 20 days to file a response.

In the Plan, the term "substantial consummation" is defined in accordance with 11 U.S.C. § 1101(2)[2] to "mean the time the reorganized [Plaintiffs have] commenced the distribution of initial Plan payments to all creditor classes."

---

[2] "[S]ubstantial consummation" means—
    (A)    transfer of all or substantially all of the property proposed by the plan to be transferred;
    (B)    assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
    (C)    commencement of distribution under the plan.
11 U.S.C. § 1101(2).

4.  *Completion of Case and Discharge*.

On October 14, 2010, the Plaintiffs filed a Final Report and Chapter 11 Application for Final Decree, reporting that they had commenced distribution under the Plan.  On December 10, 2010, the court entered a Final Decree which held that the Plan had been substantially consummated as provided in 11 U.S.C. § 1101(2) and ordered the case closed.  The court reopened the case on June 14, 2012,[3] and on August 24, 2012, the Plaintiffs filed a Report of Completion of Plan Payments and Request for Entry of Discharge.  On September 27, 2012, the court entered a Discharge of Individual Debtor in a Chapter 11 Case ("Discharge Order"), which granted the Plaintiffs a discharge pursuant to 11 U.S.C. § 1141(d), and an Order Closing Case.

B.  Plaintiffs' Demand for Cancelation of Judgment

On August 22, 2014, the Plaintiffs' counsel sent a letter ("Demand Letter") to Qulia, the Defendant's general counsel, notifying Qulia that the Judgment remained on the public record in Mecklenburg County and demanding that the Defendant "cancel and mark paid the judicial lien . . . ."  On August 28, 2014, Qulia responded to the Demand Letter and declined to cancel the Judgment.  Qulia acknowledged that the court's decision entered in the Preference AP avoided the Judgment Lien created by the Judgment but denied that either the Plaintiffs requested, the court directed, or applicable law required the Defendant "to do, or not do, any particular act."[4]

---

[3] The Plaintiffs moved to reopen their case for the primary purpose of filing a Motion for Contempt and Sanctions against SunTrust Mortgage, Inc., although the Plaintiffs anticipated that they would also seek their discharge while the case open.

[4] This entire matter could have been avoided if Qulia had engaged outside counsel sooner or attempted to work with the Plaintiffs' counsel to fashion a remedy to the issues raised in the Demand Letter.  Competent corporate counsel should know when to engage professionals who have knowledge and experience in a specific discipline.

## C.  Adversary Proceeding *Sub Judice* Against Defendant

### 1.  *Claims for Relief*

On October 23, 2014, the Plaintiff's bankruptcy case was reopened for a third time.[5]  On October 24, 2014, the Plaintiffs initiated this adversary proceeding by filing a Complaint for Injunctive Relief, Declaratory Relief, Civil Penalties, Sanctions and Damages ("Complaint"), subsequently amended by a First Amended Complaint for Injunctive Relief, Declaratory Relief, Civil Penalties, Sanctions and Damages ("Amended Complaint")[6] filed on May 30, 2017.  The Amended Complaint alleges that the Defendant was obligated to cancel the Judgment and sets forth seven claims for relief ("Claims for Relief") allegedly arising from the Defendant's failure to cancel the Judgment:

1.  Breach of Contract;

2.  Violation of N.C. Gen. Stat. § 1-239;

3.  Violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1 et seq;

4.  Intentional Infliction of Emotional Distress;

5.  Negligent Infliction of Emotion Distress (Alternative Claim for Relief);

6.  Negligence (Alternative Claim for Relief); and

7.  Federal Declaratory Judgment Act ("FDJA"), 28 U.S.C. § 2201(a).

---

[5] Between the closing of the case after entry of the Discharge Order and this third reopening of the case, the case was reopened for a second time to allow the Plaintiffs to file a second Motion for Contempt and Sanctions against SunTrust Mortgage, Inc. and then closed again after resolution of the matter.

[6] The Plaintiffs filed the Amended Complaint at the request of the court for the purpose of consolidating the allegations set forth in the original Complaint with subsequent allegations contained in a Supplement to Complaint for Injunctive Relief, Declaratory Relief, Civil Penalties, Sanctions and Damages filed on August 10, 2015.  Although the Amended Complaint was filed subsequent to the Motion to Dismiss, there is no substantive change to the seven claims for relief of which the Defendant challenges the court's subject matter jurisdiction.

The first six Claims for Relief seek damages under North Carolina common and statutory law, whereas the seventh Claim for Relief requests this federal court to make a declaratory judgment that the Defendant violated N.C. Gen. Stat. § 1-239 and the UDTPA.

In addition to the Claims for Relief, the Amended Complaint contains a Motion for Contempt and Sanctions ("Contempt Motion") which requests the court to hold the Defendant in civil contempt and impose sanctions against the Defendant for alleged violation of provisions the Preference Judgment, the Plan, and Confirmation Order, and the Discharge Order.

### 2. *Jurisdictional Allegations*

The Amended Complaint contains the following allegations:

This Court has personal and subject-matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 151, and 157, as well as the Standing Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. Likewise, this Court retained jurisdiction over this matter pursuant to the Plan of Reorganization, which was proposed by the [Plaintiffs] and confirmed upon entry of the Confirmation Order.

The Defendant denied these allegations in the Defendant's Answer to Plaintiffs' Amended and Restated Complaint filed on June 13, 2017.

### 3. *Summary Judgment Motion*

On November 24, 2014, concurrently with filing its original answer to the Complaint, the Defendant filed a Motion by Commercial Credit Group Inc. Seeking Summary Judgment as to Plaintiffs' Motion and First Through Seventh Claims, Pursuant to Fed. R. Civ. P. 56(b) [sic][7]

---

[7] A motion for summary judgment is made pursuant to Rule 56(a), and Rule 56(b) addresses only the time within which a motion for summary judgment motion may be filed. Rule 56(a), incorporated and made applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides as follows:

A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a).

("Summary Judgment Motion").  In the Summary Judgment Motion, the Defendant asserted, *inter alia*, that the court lacks jurisdiction over the Contempt Motion and the Claims for Relief and prayed the court to *dismiss*[8] with prejudice the Contempt Motion and the Claims for Relief.

In response to the Summary Judgment Motion, the Plaintiffs filed on December 15, 2014 a Motion for Entry of Order Denying or, in the Alternative, Continuing Consideration of Defendant's Motion for Summary Judgment ("Rule 56(d) Motion") and accompanying First Motion for Extension of Time to Respond to Motion by Commercial Credit Group Inc. Seeking Summary Judgment as to Plaintiffs' Motion and First Through Seventh Claims, Pursuant to Fed. R. Civ. P. 56(b)[9] ("Extension Motion").  In the Rule 56(d) Motion, the Plaintiffs argued that they did not yet have sufficient facts to defend the Summary Judgment Motion and requested the court to deny the Summary Judgment Motion pursuant to Rule 56(d)(1) or, alternatively, to defer consideration of the Summary Judgment pursuant to Rule 56(d)(2) to allow the Plaintiffs adequate time to conduct discovery. In the Extension Motion, the Plaintiffs requested an extension of time within which to respond to the Summary Judgment Motion due to the pending Rule 56(d) Motion.

On January 21, 2015, the court conducted a hearing on the Rule 56(d) Motion and the Extension Motion, which necessarily included arguments on the merits of the Summary Judgment Motion.  On March 26, 2015, the court entered an Order Denying Motion for Summary Judgment

---

[8] A prayer for relief in a motion brought under Rule 56(a) governing summary judgment is not properly a request for dismissal but for judgment on the merits in favor of the moving party when there are no genuine dispute over the material facts.  The original jurisdictional challenge contained within the Summary Judgment Motion should have been presented at that time as a motion for dismissal under Rule 12(b)(1).

[9] Rule 56(d), incorporated and made applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides as follows:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
    (1)  defer considering the motion or deny it;
    (2)  allow time to obtain affidavits or declarations or to take discovery; or
    (3)  issue any other appropriate order.
Fed. R. Civ. P. 56(d).

("Summary Judgment Order") which denied the Summary Judgment Motion, effectively allowing the Rule 56(d) Motion.[10]  Denial of the Summary Judgment Motion rendered the Extension Motion moot.

At the hearing, the parties did not address substantially the Defendant's jurisdictional challenge contained within the Summary Judgment Motion, and the court's denial of the Summary Judgment Motion was based upon the court's belief that the Defendant had not established that no genuine dispute as to any material fact existed.  Based upon the allegations in the Plaintiffs' pleadings, the Summary Judgment Order contained a standard conclusion of law regarding its jurisdiction:

> This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334.  The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

### 4. *Third Party Complaint*

On November 25, 2014, the Defendant filed a Third Party Complaint Against Stubbs & Perdue, P.A. ("Third Party Complaint"), asserting contribution claims against the Plaintiffs' counsel for any liability the Defendant may have to the Plaintiffs.  In the Third Party Complaint, the Defendant alleged that "[t]his Court has subject matter jurisdiction to the same extent as such jurisdiction exists in the claims originally asserted by Plaintiffs against CCG in the underlying adversary proceeding."  On March 25, 2014, upon motion of the Plaintiffs, the court entered an Order Dismissing Third-Party Complaint.[11]

---

[10] The decretal portion of the Summary Judgment Order declared the Rule 56(d) Motion moot due to the denial of the Summary Judgment Motion; however, denial of the Summary Judgment Motion was in essence an allowance of the relief requested in the Rule 56(d) Motion.

[11] The court was not impressed by this tactic undertaken by the Defendant.

5.  *Motion to Dismiss*

In the Motion to Dismiss currently before the court, the Defendant asserts that the court

lacks subject matter jurisdiction over the Claims for Relief.  The Defendant does not challenge the

court's subject matter jurisdiction of the Contempt Motion and filed simultaneously with the

Motion to Dismiss a CCG's Motion for Summary Judgment Denying Plaintiffs' Motion for

Contempt and Sanctions ("Second Summary Judgment Motion").

## II. DISCUSSION

### A.  Rule 12(b)(1) Standard of Consideration

Rule 12(b)(1) provides a defense to a claim for relief for "lack of subject matter

jurisdiction." Fed. R. Civ. P. 12(b)(1).  When a court's subject matter jurisdiction is challenged,

the court has the authority to determine whether it in fact has subject matter jurisdiction. *Chicot*

*Co. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376, 60 S. Ct. 317, 319, 84 L. Ed. 329

(1940).

The United States Court of Appeals for the Fourth Circuit describes the standard for

consideration of a motion made under Rule 12(b)(1) as follows:

> When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject
> matter jurisdiction, the burden of proving subject matter jurisdiction is on the
> plaintiff. *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982). In determining
> whether jurisdiction exists, the district court is to regard the pleadings' allegations
> as mere evidence on the issue, and may consider evidence outside the pleadings
> without converting the proceeding to one for summary judgment. *Id.; Trentacosta
> v. Frontier Pacific Aircraft Indus.,* 813 F.2d 1553, 1558 (9th Cir.1987). The district
> court should apply the standard applicable to a motion for summary judgment,
> under which the nonmoving party must set forth specific facts beyond the pleadings
> to show that a genuine issue of material fact exists. *Trentacosta, supra,* 813 F.2d at
> 1559 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–
> 53, 91 L.Ed.2d 265 (1986)). The moving party should prevail only if the material
> jurisdictional facts are not in dispute and the moving party is entitled to prevail as
> a matter of law. *Trentacosta, supra,* 813 F.2d at 1558.

*Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

B. <u>Subject Matter Jurisdiction</u>

Subject matter jurisdiction is by definition a court's power to adjudicate a controversy of a specific subject matter.  Subject matter jurisdiction over cases and proceedings in bankruptcy is codified in 28 U.S.C. § 1334 which provides in part as follows:

> (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

> (b) Except as provided in subsection (e)(2),[12] and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334.  A district court may refer this jurisdiction to its bankruptcy judges which are officers of the district court and compromise a unit of the district court:  "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a).  In this district, the district court entered a general order which refers its subject matter jurisdiction over "any and all cases under Title 11 and any and all proceedings arising under Title 11 or arising in or related to a case under Title 11 . . . to the bankruptcy judges for the Eastern District of North Carolina." Referral of Bankruptcy Matters to Bankruptcy Judges (E.D.N.C. Aug. 3, 1984).

1. *Subject Matter Jurisdiction Cannot be Created*

A court's subject matter jurisdiction as defined in 28 U.S.C. § 1334 is absolute, and jurisdiction cannot be created by court order or agreement of the parties.  The Fourth Circuit recognized this concept with respect to retention of jurisdiction provisions included commonly in

---

[12] This subsection gives the district court exclusive jurisdiction over matters involving the employment of professional persons under 11 U.S.C. § 327.

Chapter 11 plans of reorganization and held that "neither the parties nor the bankruptcy court can create § 1334 jurisdiction by simply inserting a retention of jurisdiction provision in a plan of reorganization if jurisdiction is otherwise lacking." *Valley Historic Ltd. P'Ship v. Bank of N.Y.*, 486 F.3d 831, 837 (4th Cir. 2007) (citing *New Horizon of N.Y., L.L.C. v. Jacobs*, 231 F.3d 143, 155 (4th Cir. 2000).  In other words, a debtor "cannot write its own jurisdictional ticket." *Id.* (quoting *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 164 (7th Cir. 1994)).  The retention of jurisdiction provisions contained in the Plaintiffs' confirmed Plan are superfluous and do not confer the court with subject matter jurisdiction over the Claims for Relief.

    2. *The Defendant is not Estopped from Challenging Subject Matter Jurisdiction*

The Plaintiffs argue that the Defendant should be estopped from challenging the court's subject matter jurisdiction based upon the equitable principles of the law of the case doctrine and judicial estoppel.  First, the Plaintiffs contend that the law of the case doctrine prevents the court from reconsidering its determination contained within the Summary Judgment Order that it had subject matter jurisdiction over this adversary proceeding.  Next, the Plaintiffs suggest that the Defendant should be judicially estopped from taking a position contrary to the Defendant's allegation concerning subject matter jurisdiction in the Third Party Complaint.

### a. Law of the Case

The law of the case doctrine dictates that "when a court decides upon a rule of law, that decision *should* continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S. Ct. 2166, 2177, 100 L. Ed.2d 811 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618, 103 S. Ct. 1382, 1391, 75 L. Ed.2d 318 (1983) (emphasis added)).  This rule of practice is intended to promote the "finality and efficiency of the judicial process" but is nevertheless discretionary and "merely expresses the

practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Id.* at 816-17, 108 S. Ct. at 2177-78, 100 L. Ed.2d 811 (quoting *Messinger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912)).

The Fourth Circuit holds that courts should follow generally the law of the case doctrine "unless: (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999) (quoting *Sejman v. Warner–Lambert Co.,* 845 F.2d 66, 69 (4th Cir.1988) (quoting *Equal Emp't Opportunity Comm'n v. Inter. Longshoremen's Ass'n.,* 623 F.2d 1054, 1058 (5th Cir.1980))). Recognizing the discretionary nature of the law of the case doctrine, the Fourth Circuit rejected its appropriateness to questions of subject matter jurisdiction:

> Law of the case is just that however, it does not and cannot limit the power of a court to reconsider an earlier ruling. The ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law. Though that obligation may be tempered at times by concerns of finality and judicial economy, nowhere is it greater and more unflagging than in the context of subject matter jurisdiction issues, which call into question the very legitimacy of a court's adjudicatory authority. These questions are of such overriding import that the Supreme Court has, in other contexts, carved out special exceptions for them to the general rules of procedure. So, for example, a party can challenge subject matter jurisdiction for the first time on appeal even though, in most contexts, issues not raised below are considered waived. *See, e.g., Wisconsin Dept. of Corrections v. Schacht,* 524 U.S. 381, 389, 118 S. Ct. 2047, 141 L. Ed.2d 364 (1998) ("No party can waive the [subject matter jurisdiction] defect or consent to jurisdiction."). Thus, the Supreme Court itself has decided that the value of correctness in the subject matter jurisdiction context overrides at least some of the procedural bars in place to protect the values of finality and judicial economy. *See* 18B Wright, Miller & Cooper, Federal Practice and Procedure § 4478 (2d ed. 2002) ("Even after the first final judgment, the nature of some issues may encourage reconsideration; the most obvious illustration is provided by the rule that federal subject-matter jurisdiction remains open until there is no more opportunity to continue the proceeding by appeal.").

13

*Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003). This reasoning is reflected in Rule 12(h)(3)[13] which requires that "[i]f the court determines *at any time* that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P 12(h)(3) (emphasis added). Despite its jurisdictional finding contained in the Summary Judgment Order, the court is not only empowered, but also obligated, to reconsider its subject matter jurisdiction, either upon request or *sua sponte*, if at any time the previous determination is questioned. The law of the case doctrine does not preclude the court's consideration of the Defendant's Motion to Dismiss.

### b. Judicial Estoppel

In addition to rejecting the applicability of the law of the case doctrine, the court discards the Plaintiffs' contention that the Defendant is judicially estopped from challenging the court's subject matter jurisdiction. "Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation." *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28-29 (4th Cir. 1995) (citing *United Va. Bank/Seaboard Nat. v. B.F. Saul Real Estate Invest. Trust*, 641 F.2d 185, 190 (4th Cir. 1981)).

The Plaintiffs assert that the Defendant's challenge of the court's subject matter jurisdiction over the Claims for Relief is inconsistent with its allegation within the Third Party Complaint that "[t]his Court has subject matter jurisdiction to the same extent as such jurisdiction exists in the claims originally asserted by Plaintiffs against [the Defendant] in the underlying adversary proceeding." The court questions whether this statement is inconsistent with the Defendant's current position that the court lacks subject matter jurisdiction. The Third Party Complaint merely proffered that to the extent that the court has subject matter jurisdiction over the Claims for Relief, an allegation which the Defendant denied, then that subject matter jurisdiction extended to the

---

[13] Rule 12(h)(3) is incorporated and made applicable by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.

14

Defendant's third party claims for relief against the Plaintiffs' counsel.  Even if the Defendant's current position is inconsistent with its prior stance on subject matter jurisdiction, judicial estoppel is not applicable to the Motion to Dismiss.

The Plaintiffs quote the Fourth Circuit's recitation of three elements that must be established for the doctrine of judicial estoppel to apply:

> (1) The party to be estopped must be asserting a position that is *factually* incompatible with a position taken in a prior judicial or administrative proceeding; (2) the prior inconsistent position must have been accepted by the tribunal; and (3) the party to be estopped must have taken inconsistent positions intentionally for the purpose of gaining unfair advantage.

*King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192, 196 (4th Cir. 1998) (citations omitted) (emphasis added).[14]  The Plaintiffs fail to recognize that the inconsistent "position sought to be estopped must be one of fact rather than law or legal theory." *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996) (citing *Tenneco Chemicals, Inc. v. William T. Burnett & Co., Inc.*, 691 F.2d 658, 664-65 (4th Cir. 1982); Mark J. Plumer, Note, *Judicial Estoppel: The Refurbishing of a Judicial Shield,* 55 Geo. Wash. L.Rev. 409, 411 (1987)).  Subsequent to *King*, the Fourth Circuit emphasized more clearly this necessity by enumerating four requirements for judicial estoppel to apply:

> (1) the party to be estopped must be advancing an assertion that is inconsistent with a position taken during previous litigation; (2) the *position must be one of fact instead of law*; (3) the prior position must have been accepted by the court in the first proceeding; and (4) the party to be estopped must have acted intentionally, not inadvertently.

*Folio v. City of Clarksburg, W.Va.*, 134 F.3d 1211, 1217–18 (4th Cir. 1998) (citing *Lowery*, 92 F.3d at 224) (emphasis added).  Whether subject matter jurisdiction exists is not a matter of fact

---

[14] The Plaintiffs also cite various opinions on judicial estoppel issued by either the North Carolina Supreme Court or the North Carolina Court of Appeals.  Although the Claims for Relief are rooted in state law, whether this federal court has subject matter jurisdiction over the Claims for Relief is a matter of federal law.

but a question of law.[15] *Trans Energy, Inc. v. EQT Prod. Co.*, 743 F.3d 895, 900 (4th Cir. 2014)

(citing *Educ. Credit Mgmt. Corp. v. Kirkland (In re Kirkland)*, 600 F.3d 310, 314 (4th Cir. 2010)).

The Defendant cannot, therefore, be judicially estopped from challenging the court's subject

matter jurisdiction of the Claims for Relief.

### 3. *The Court's Subject Matter Jurisdiction is Dictated by 28 U.S.C. § 1334*

With no preclusions to the court's consideration of the Motion to Dismiss, the court must

focus solely on 28 U.S.C. § 1334.  Under this statute, made applicable to the court through 28

U.S.C. § 157(a) and the district court's general order of reference, the court "has subject matter

jurisdiction of (1) cases *under* the Bankruptcy Code, (2) proceedings *arising under* the Bankruptcy

Code, (3) proceedings *arising in a case under* the Bankruptcy Code, and (4) proceedings *related

to a case under* the Bankruptcy Code." *Kozec v. Murphy (In re Murphy)*, 569 B.R. 402, 412 (Bankr.

E.D.N.C. 2017) (emphasis in original).

### a. Jurisdiction of Cases Under the Bankruptcy Code

A bankruptcy petition and order for relief create a case which is under the Bankruptcy

Code, thus the court has subject matter jurisdiction over the administration all such cases filed in

this district, including the Plaintiffs' Chapter 11 case.  Claims for relief presented within an

associated adversary proceeding, however, do not amount to a case under the Bankruptcy Code.

"The court's definitive jurisdiction over a bankruptcy case does not automatically extend to all

proceedings that may be presented to it within the case, and the court must look to the nature of

---

[15] In their memorandum, the Plaintiffs extensively analogized a case in which the United States Supreme
Court concluded that a litigant was judicially estopped from asserting that a river boundary was in a different location
than the litigant had previously agreed in a consent decree. *New Hampshire v. Maine*, 532 U.S. 742, 56, 121 S. Ct.
1808, 1818, 149 L. Ed.2d 968 (2001).  Although not specifically emphasized by the Supreme Court, the location of a
river boundary is clearly a matter of fact and not law, making judicial estoppel appropriate in that case.

the proceeding to determine whether it arises under the Bankruptcy Code or arises in or is related to the bankruptcy case." *Id.*

### b. Jurisdiction of Proceedings Arising Under the Bankruptcy Code

"A proceeding 'arises under' Title 11 if it invokes a 'substantive right created by the Bankruptcy Code.'" *L. Ardan Dev. Corp. v. Touhey (In re Newell)*, 424 B.R. 730, 733 (Bankr. E.D.N.C. 2010) (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)).  The Plaintiffs argue that adjudication of the Claims for Relief is dependent upon resolution of a substantial question of integral provisions of the Bankruptcy Code, namely 11 U.S.C. §§ 524 and 1141.  The court disagrees.

Each of the Claims for Relief as stated in the Amended Complaint involves issues of state law, including the seventh Claim for Relief asserted under the FDJA.  This federal law empowers a federal court to issue a declaratory judgment of a controversy of which it has jurisdiction;[16] therefore, the court must have jurisdiction over the state laws of which the Plaintiffs seek a declaratory judgment for the FDJA to apply.  Even if the Claims for Relief stemmed from orders or proceedings within the Plaintiffs' bankruptcy, as alleged by the Plaintiffs, adjudication of the Claims for Relief will not involve consideration of any rights *created by* provisions of the federal Bankruptcy Code.  The Claims for Relief do not "arise under" the Bankruptcy Code.

### c. Jurisdiction of Proceedings Arising In a Case Under the Bankruptcy Code

"Proceedings 'arising in' a case under Title 11 are those that 'are not based on any right expressly created by title 11, but nevertheless, would have no existence outside the bankruptcy.'" *Bergstrom v. Dalkon Shield Claimants Trust (In re A.H. Robins Co.)*, 86 F.3d 364, 372 (4th Cir.

---

[16] "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).

1996) (quoting *Wood*, 825 F.2d at 97)).  In *Bergstrom*, the Fourth Circuit held that a district court had "arising in" jurisdiction to limit the amount of fees available to attorneys for claimants to the Dalkon Shield Claimants Trust, which was created by the confirmed Chapter 11 plan of reorganization for A.H. Robins Company, Inc., because the proceeding or controversy "would have no practical existence *but for* the bankruptcy.'" *Id.* (emphasis added).  The Plaintiffs argue that although the Claims for Relief are based upon state law, they stem from the Defendant's alleged violations of the Plan and orders entered in the Plaintiffs' bankruptcy case; therefore, the Claims for Relief would not exist "but for" the Plaintiffs' bankruptcy case.  After examining and contemplating the Fourth Circuit's intended meaning of the words "but for," the court rejects the Plaintiffs' position and concludes that it does not have "arising in" jurisdiction over the Claims for Relief.

The "but for" test established by *Bergstrom* was astutely analyzed by the United States Bankruptcy Court for the Eastern District of Virginia in *SunTrust Bank v. Roberson (In re Baseline Sports, Inc.)*, 393 B.R. 105 (Bankr. E.D. Va. 2008).  The *Baseline Sports* court noted that *Bergstrom* and the subsequent Fourth Circuit case of *Grausz v. Englander*, 321 F.3d 467 (4th Cir. 2003)[17] seem to impose a broad and literal interpretation of "but for," which was perhaps curbed by *Valley Historic* when the Fourth Circuit "recognized that the 'but for' test would not extend 'arising in' jurisdiction to a Debtor's 'breach of contract claim and tortious interference claim [that] would have an existence outside of bankruptcy . . . .'" *Id.* at 123 (quoting *Valley Historic*, 486 F.3d at 836).  "[T]he problem with the 'but for' test, as expressed in [*Bergstrom*] is that it is over-inclusive.  At its fullest breadth, the 'but for' test would allow a plaintiff to invoke the core

---

[17] In *Grausz*, the Fourth Circuit held that the district court had jurisdiction to over a malpractice claim against a debtor's attorney whose fees were previously approved by the bankruptcy court, thereby triggering issues of *res judicata*.

jurisdiction of a bankruptcy court by simply tracing the origins of the dispute to a prior

bankruptcy." *Id.* (quoting *Poplar Run Five Ltd. P'ship v. Va. Elec. & Power Co. (In re Poplar Run

Five Ltd. P'ship)*, 192 B.R. 848, 857 (Bankr. E.D. Va. 1995)).

The *Baseline Sports* court went on to examine the Fifth Circuit's *Wood* case that was cited

exclusively by the Fourth Circuit in *Bergstrom*:

> [T]he *Wood* court's reasoning is informative and helps flesh out the Fourth Circuit's
> original understanding of "arising in" jurisdiction. In *Wood,* the Fifth Circuit stated,
> "[t]he meaning of 'arising in' proceedings is less clear, but seems to be a reference
> to those 'administrative' matters that arise *only* in bankruptcy cases." *Wood,* 825
> F.2d at 97 (emphasis in original). The Fifth Circuit noted that the *Collier*
> bankruptcy treatise understood "arising in" to encompass a narrow category of
> administrative matters that occur only within the context of a bankruptcy case. *Id.*
> (citing 1 *Collier on Bankruptcy* ¶ 3.01 at 3–23 (1987)).

*Id.* at 123-24.  The court then concluded that it did not have "arising in" jurisdiction of a creditor's

state law causes of actions related to a settlement agreement entered into between the creditor and

the debtor during the debtor's Chapter 11 case, because those claims were not "the type of

administrative matters which could only happen, by their nature, in a bankruptcy case." *Id.* at 125.

This court is further persuaded by the logic of First Circuit in *Gupta v. Quincy Med. Ctr.*,

858 F.3d 657 (1st Cir. 2017), a recent case which presented analogous factual circumstances to

those before this court.  In *Gupta*, the appellee purchased a medical center from Chapter 11 debtors

pursuant to an Asset Purchase Agreement ("APA") approved by the bankruptcy court pursuant to

11 U.S.C. §§ 363 and 365.[18] *Id.* at 659.  The APA contained provisions that obligated the appellee

to offer continued employment to certain employees of the medical center at their wage and salary

levels existing just prior to the sale closing, and if the appellee terminated employment of any such

employee at or following the closing, then the appellee was liable to that employee for applicable

---

[18] The debtors executed the APA prior to filing their Chapter 11 petition; therefore, the APA was an executory
contract subject to the provisions of 11 U.S.C. § 365.

19

severance or retention pay. *Id.* at 659-60.  The appellants, employees of the medical center at the time of closing whose employment was shortly thereafter terminated by the appellee, sought severance pay from the appellee in the bankruptcy court. *Id.* at 660.

The bankruptcy court, asserting jurisdiction based upon retention of jurisdiction of clauses in the sale order and the debtors' confirmed plan of reorganization, found the appellee liable to the appellants under the terms of the APA. *Id.* at 660-61.  On appeal, the district court concluded that the bankruptcy court lacked subject matter jurisdiction over the appellants' claims, vacated the judgments against the appellee, and remanded the matter back to the bankruptcy court with instructions to dismiss the appellants' claims. *Id.* at 661.

In affirming the district court, the First Circuit referenced the Fourth Circuit's holding in *Valley Historic* in first determining that despite routine inclusion of retention of jurisdiction provisions in Chapter 11 plans, those provisions may only be given effect if jurisdiction exists under 28 U.S.C. § 1334. *Id.* at 664 (citing *Valley Historic*, 486 F.3d at 837).  In an argument similar to that of the Plaintiffs in the case *sub judice*, the *Gupta* appellants asserted that their state law claims against the appellee "arise in" the bankruptcy case, because "but for" the case and the bankruptcy court's order approving sale of the medical center to the appellee under the APA, their claims for severance pay would not exist. *Id.*  The First Circuit disagreed:

> This argument misapprehends relevant law.  As we have explained, it is not enough for "arising in" jurisdiction that a claim arose in the context of a bankruptcy case.  Instead, our case law makes clear that for "arising in" jurisdiction to apply, the relevant proceeding must have "no existence outside of the bankruptcy." *Middlesex Power Equip. & Marine, Inc. v. Town of Tyngsborough, Mass. (In re Middlesex Power Equip. & Marine, Inc.)*, 292 F.3d 61, 68 (1st Cir. 2002) (quoting *Wood*, 825 F.2d at 97).  Hence, there is no "but for" test for "arising in" jurisdiction as Appellants suggest.  That is, "the fact that a matter would not have arisen had there not been a bankruptcy case does not ipso facto mean that the proceeding qualifies as an 'arising in' proceeding." Collier ¶ 3.01[3][e][iv].  Instead, the fundamental question is whether the proceeding by its nature, not its particular circumstance, could arise <u>only</u> in the context of a bankruptcy case. *In re Middlesex Power Equip.*

> *& Marine, Inc.*, 292 F.3d at 68.  In other words, it is not enough that Appellants'
> claims arose in the context of a bankruptcy case or even that those claims exist only
> because Debtors (Appellants' former employer) declared bankruptcy; rather,
> "arising in" jurisdiction exists only if Appellants' claims are the type of claims that
> can only exist in a bankruptcy case.

*Gupta*, 858 F.3d at 664-65 (emphasis in original).  Although the First Circuit explicitly rejected the "but for" test of this court's controlling circuit, its reasoning is instructive that perhaps the Fourth Circuit's choice of the words "but for" is misleading and should not be interpreted literally.

With respect to the first Claim for Relief for breach of contract, the Plaintiffs correctly argue that the Plan is a binding contract between the parties. *See*, *e.g.*, *In re Coastline Care, Inc.*, 299 B.R. 373, 378 (Bankr. E.D.N.C. 2003) (noting that pursuant to 11 U.S.C. § 1141(a), "[a] confirmed plan is binding on the debtors and all creditors, whether or not they have accepted the plan").  The court holds that its confirmation of the Plan, which does not violate any confirmation requirements of 11 U.S.C. § 1129, is simply an approval of this contract and does not extend "arising in" jurisdiction to breach of contract actions related to performance under the Plan.  The parties could have certainly agreed to the Plan's treatment of the Plaintiffs' debt to the Defendant outside of the bankruptcy arena through a loan modification or other type of contract; therefore, the contractual obligations set forth in the Plan cannot be considered to exist "but for" the Plaintiffs' bankruptcy case.  The proper forum for adjudication of breach of contract claims related to the Plan is the state court.

The second Claim for Relief alleges that the Defendant's failure to cancel the Judgment after the Plaintiffs' completion of payments under the Plan and the court's Discharge Order and after receipt of the Demand Letter violated N.C. Gen. Stat. § 1-239(c) which provides:

> Upon receipt by the judgment creditor of any payment of money upon a judgment,
> the judgment creditor shall within 60 days after receipt of the payment give
> satisfactory notice thereof to the clerk of the superior court in which the judgment
> was rendered, and the clerk shall thereafter promptly enter the payment on the

judgment docket of the court, and the clerk shall immediately forward a certificate thereof to the clerk of the superior court of each county to whom a transcript of the judgment has been sent, and the clerk of each superior court shall thereafter promptly enter the same on the judgment docket of the court and file the original with the judgment roll in the action. If the judgment creditor fails to file the notice required by this subsection within 30 days following written demand by the debtor, he may be required to pay a civil penalty of one hundred dollars ($100.00) in addition to attorneys' fees and any loss caused to the debtor by such failure. The clear proceeds of civil penalties provided for in this section shall be remitted to the Civil Penalty and Forfeiture Fund in accordance with G.S. 115C-457.2.

N.C. Gen. Stat. § 1-239(c) (1998). The court finds no "arising in" jurisdiction over this Claim for Relief, because an action under N.C. Gen. Stat. § 1-239 is not dependent upon the circumstances which trigger a judgment creditor's obligation to give public notice that a judgment is satisfied. If the voiding of a judgment pursuant to 11 U.S.C. § 524(a)(1)[19] is a receipt of payment of money upon a judgment, the statutory duty under N.C. Gen. Stat. § 1-239 is no different than if the judgment was paid outside of bankruptcy. Determination of whether a judgment creditor violated this duty is not an administrative matter that "arises in" or exists only "but for" a debtor's bankruptcy and discharge.

In the third through sixth Claims for Relief, the Plaintiffs assert that the Defendant's actions allegedly inconsistent with the Preference Judgment, Plan, Confirmation Order, and Discharge Order, as well as alleged failure to comply with N.C. Gen. Stat. § 1-239, constitute unfair and deceptive actions in violation of the UDTPA and give rise to liability for damages under the common law tort of intentional inflection of emotional distress, or alternatively, the torts of negligent infliction of emotional distress or plain negligence. In *Harlan v. Rosenberg & Assocs., LLC (In re Harlan)*, 402 B.R. 703 (Bankr. W.D. Va. 2009), discharged Chapter 7 debtors brought an adversary proceeding against a secured creditor and its attorney, alleging a violation of the

---

[19] "A discharge in a case under this title . . . voids any judgment at any time obtained, to the extend that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is wavied." 11 U.S.C. § 524(a)(1).

discharge injunction of 11 U.S.C. § 524(a) and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* The United States Bankruptcy Court for the Western District of Virginia, also within the Fourth Circuit's jurisdiction, found that while it had jurisdiction to sanction, through civil contempt and possibly compensatory damages, a violation of the discharge injunction, it did not possess subject matter jurisdiction over the FDCPA claim. *Id.* at 710-14.

In addressing "arising in" jurisdiction under 28 U.S.C. § 1334(b), the *Harlan* court recognized the "but for" test but disagreed with the debtors that it possessed jurisdiction of the FDCPA claims simply because they arose from the same communications which allegedly violated the discharge:

> Violations of the FDCPA give rise to a private right to action that "may be brought in any appropriate United States district court . . . or in any other court of competent jurisdiction." 15 U.S.C. § 1692k(d). FDCPA claims therefore exist outside of bankruptcy. Accordingly, the Debtors' FDCPA claims do not "arise under" the Bankruptcy Code or "arise in" their bankruptcy proceeding.

*Id.* at 711. Applying this interpretation of *Bergstrom* and the logic of *Gupta*, the court holds that it also does not have "arising in" jurisdiction over the third through sixth Claims for Relief which can and do exist outside of the Plaintiffs' bankruptcy case. The court need not separately consider the seventh Claim for Relief under the FDJA, because as discussed *supra*, this Claim for Relief seeks merely declaratory judgments regarding claims over which the court has already determined it lacks "arising in" jurisdiction.

### d. Jurisdiction of Proceedings Related to a Case Under the Bankruptcy Code

Finally, the court must consider whether the Claims for Relief are "related to" the Plaintiffs' bankruptcy case. The United States Supreme Court believes that "'Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate,' and that the 'related to'

23

language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a))

jurisdiction over more than simple proceedings involving the property of the debtor or the estate .

. . ." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S. Ct. 1493, 1499, 131 L.Ed.2d 403 (1995)

(quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)) (other citations omitted).  The

Supreme Court thus recognized the Third Circuit's *Pacor* test which had been previously adopted

by the Fourth Circuit in *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002 n. 11 (4th Cir. 1986).

> The *Pacor* test provides that—

> [t]he usual articulation of the test for determining whether a civil proceeding is
> related to bankruptcy is whether *the outcome of that proceeding could conceivably
> have any effect on the estate being administered in bankruptcy.* Thus, the
> proceeding need not necessarily be against the debtor or against the debtor's
> property.  An action is related to bankruptcy if the outcome could alter the debtor's
> rights, liabilities, options or freedom of action (either positively or negatively) and
> which in any way impacts upon the handling and administration of the bankruptcy
> estate.

*Owens-Illinois, Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619, 625-26 (4th Cir.

1997) (quoting *Pacor*, 743 F.2d at 994) (emphasis in original).

In *Valley Historic*, a Chapter 11 debtor initiated an adversary proceeding after confirmation

of its plan of reorganization to recover damages for a creditor's alleged pre-petition breach of

contract and tortious interference.  In determining that the bankruptcy court lacked "related to"

jurisdiction over these matters, the Fourth Circuit relied upon another Third Circuit case issued

subsequent to *Pacor*:

> [T]he essential inquiry appears to be whether there is a close nexus to the
> bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction
> over the matter."  According to the court, for "related to" jurisdiction to exist at
> "the post-confirmation stage, the claim must affect an integral aspect of the
> bankruptcy process—there must be a close nexus to the bankruptcy plan or
> proceeding."  Practically speaking, under this inquiry "[m]atters that affect the
> interpretation, implementation, consummation, execution, or administration of the
> confirmed plan will typically have the requisite close nexus.

*Valley Historic*, 486 F.3d at 837-38 (quoting *Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 166-67 (3rd Cir. 2004)).  The Fourth Circuit adopted the Third Circuit's "close nexus" requirement and found that the debtor's adversary proceeding served no conceivable bankruptcy administration purpose, because the debtor had paid all of its creditors, and its plan was substantially consummated.

Following *Valley Historic*, the United States District Court for the Eastern District of North Carolina held that even when a plan is not substantially consummated, a post-confirmation adversary proceeding lacks a "close nexus" to a plan or bankruptcy case if the plan contains no provision for the use of any recovery. *Grathwol v. Coastal Carolina Developers, Inc.*, 2015 U.S. Dist. LEXIS 3113, at *13-14 (E.D.N.C. Jan. 9, 2015), *aff'd  Grathwol v. Coastal Carolina Developers, Inc. (In re Grathwol)*, 628 Fed. Appx. 193 (4th Cir. 2016). Further, "the mere possibility of increasing the recovery to the creditors is insufficient, standing alone, to establish the 'close nexus.'" *Id.* at *15-16 (citing *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1194 n.1 (9th Cir. 2005); *Resorts, Int'l*, 372 F.3d at 170; *BWI Liquidating Corp. v. City of Rialto (In re BWI Liquidating Corp.)*, 437 B.R. 160, 166 (Bankr. D. Del. 2010)).

After failing to find "arising under" or "arising in" jurisdiction, the *Harlan* court addressed whether the debtors' FDCPA claim was "related to" their bankruptcy case.  Following *Valley Historic* and noting that the post-petition FDCPA claim was not property of the estate under 11 U.S.C. § 541, the court determined that it did not have "related to" jurisdiction, because "the Debtors' recovery from any violation of the FDCPA will have no effect on their bankruptcy estate [and] [j]urisdiction is not vested in this Court solely because the Debtors' FDCPA claims share a common factual nexus with their claim for the Defendants' willful violation of the discharge

injunction." *Harlan*, 402 B.R. at 713.  The court quoted its sister United States Bankruptcy Court for the Eastern District of Virginia in an almost factually identical case:

> [E]ven though the FDCPA claims are based on the same conduct that is alleged to have violated the automatic stay and discharge injunction, the court is unable to find that they are "related to" the debtor's bankruptcy case within the meaning of Section 1334, since recovery will not, even indirectly, benefit the bankruptcy estate or vindicate a right protected by the Bankruptcy Code.

*Id.* (quoting *Gates v. Didonato (In re Gates)*, 2004 WL 3237345 (Bankr. E.D. Va. 2004)).

The Plaintiffs initiated the present adversary proceeding nearly four years after substantial consummation of the Plan and over two years after the Plaintiffs completed their obligations under the Plan and obtained a discharge.  Not only did the Claims for Relief not exist when the Plaintiffs filed their Chapter 11 petition, they did not seemingly exist when the court entered the Discharge Order.  The Plaintiffs provide no indication in any of their Claims for Relief that the Plaintiffs are seeking damages for the benefit of their now nonexistent bankruptcy estate.  The notion that the Claims for Relief might bear some tangential relation to the Plaintiffs' long-completed bankruptcy case is not sufficient to provided "related to" jurisdiction within the meaning of 28 U.S.C. § 1334(b).

## IV.  CONCLUSION

The Claims for Relief are neither cases under the Bankruptcy Code, proceedings arising under the Bankruptcy Code, nor proceedings arising in or related to a case under the Bankruptcy Code; therefore, the court must dismiss the Claims for Relief for lack of subject matter jurisdiction pursuant to Rules 12(b)(1) and 12(h)(3).  The court believes that it nonetheless possesses jurisdiction over the Contempt Motion and will proceed with adjudication of this component of the adversary proceeding through the Second Summary Judgment Motion; now therefore,

IT IS ORDERED, ADJUDGED, AND DECREED as follows:

1.      The Motion to Dismiss be, and hereby is, granted;

2.      Counts one through seven inclusive of the Amended Complaint be, and hereby are, dismissed.

**END OF DOCUMENT**